UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ENERGY & ENVIRONMENT LEGAL INSTITUTE, *et al.*, | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. 14-0502 (ABJ) |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) ) ) ) |  |
| Defendant. | ) ) |  |

# **MEMORANDUM OPINION**

Plaintiffs the Energy & Environment Legal Institute and Free Market Environmental Law Clinic requested records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, from defendant, the Federal Energy Regulatory Commission ("FERC") on October 2, 2013. Ex. A, Decl. of Leonard M. Tao [Dkt. # 17-5] at 1. Plaintiffs sought information relating to a current FERC Commissioner, Norman Bay. In particular, they requested records from 2012 and 2013, when Bay was a political appointee serving as the Director of FERC's Office of Enforcement, and he applied to serve in the same position thereafter as a career civil service appointee. *Id.*; Pls.' Mem. in Opp. to Def.'s Mot. for Summ. J. [Dkt. # 19] at 1 ("Pls.' Opp."). Ultimately, Bay did not receive the civil service appointment to the role. Def.'s Mem. in Supp. of Mot. for Summ. J. [Dkt. # 17] at 2 ("Def.'s Mem."); Pls.' Opp. at 1.[1]

---

[1] Plaintiffs did not file a statement of material facts as to which it contends there is a genuine issue necessary to be litigated, as required by Local Rules of this Court, and so the Court could consider all of the facts in FERC's statement of material facts not in dispute, [Dkt. # 17-2], to be admitted. *See* LCvR 7(h). But the parties do not disagree on the basic events that led to plaintiffs' FOIA request, and so a determination on that issue is unnecessary.

The agency produced thirty records, at least some of which were partially redacted, in response to plaintiffs' FOIA request. Def.'s Statement of Facts [Dkt. # 17-2] ¶ 4. The only question presented in this case is whether FERC lawfully withheld portions of two of those documents. The first record, document 27 ("Bay-Pederson emails"), consists of an email conversation between Bay and former FERC Chairman James Pederson. *See* Ex. 1 to Def.'s Mot. for Summ. J. [Dkt. # 17-3]. FERC contends that its redactions of the Bay-Pederson emails are justified under FOIA Exemption 5, 5 U.S.C. § 552(b)(5). Def.'s Mem. at 2. The second record, entitled "Executive Core Qualifications (ECQs)," contains Bay's written responses to questions posed to him as part of the application process for the career Director of Enforcement position.[2] FERC contends that its redactions to the ECQs are justified under FOIA Exemption 6, 5 U.S.C. § 552(b)(6). Def.'s Mem. at 3.

Plaintiffs filed their complaint on March 25, 2014, Compl. [Dkt. # 1], and FERC moved for summary judgment on August 1, 2014. Def.'s Mot. for Summ. J. [Dkt. # 17] ("Def.'s Mot."). On August 15, 2014, the Court directed FERC to deliver unredacted versions of the two documents at issue in this case for *in camera* review so that the Court could make a responsible *de novo* determination. Aug. 15, 2015 Minute Order; *see also Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). FERC complied that same day. *See* Notice of *In Camera* Submission [Dkt. # 18]. Plaintiffs filed an opposition to FERC's motion for summary judgment on August 20, 2014, Pls.' Opp., and FERC replied on September 5, 2014. Reply in Supp. of Def.'s Mot. [Dkt. # 20] ("Def.'s Reply"). Because FERC's redactions are justified by the FOIA exemptions it invokes, the Court will grant FERC's motion for summary judgment.

---

2  This record appears both as document 29 and as the last twelve pages of document 2. *See* Def.'s Mem. at 3. There is no dispute regarding the remaining pages of document 2, and so the Court, like the parties, will consider documents 29 and 2 to be a single record for purposes of this opinion. *See id.*; Pls.' Opp. at 4.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's action *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

On a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). But where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). But because "legitimate governmental and private interests could be harmed by [the] release of certain types of information," Congress provided nine specific exemptions to the disclosure requirements. *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). These nine FOIA exemptions are to be construed narrowly. *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). In this case, plaintiffs do not challenge the adequacy of FERC's search for responsive records, and so the Court will not address this factor. *See* Pls.' Opp. Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). Here, plaintiffs contend that FERC has failed to make this showing with respect to the redacted portions of the Bay-Pederson emails and the ECQs.

I. **FERC's redactions from the Bay-Pederson emails are justified by Exemption 5.**

FOIA Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that a record may be withheld under Exemption 5 only if "its source [is] a [g]overnment agency, and it . . . fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it"). Exemption 5 "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege. *Taxation With Representation Fund v. I.R.S.*, 646 F.2d 666, 676 (D.C. Cir. 1981). The agency seeking to withhold a document bears the burden of showing that an exemption applies. *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

FERC contends that the redacted portions of the Bay-Pederson emails are protected by the deliberative process privilege and therefore Exemption 5. Def.'s Mem. at 9–10. "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the [g]overnment." *Klamath*, 532 U.S. at 8–9, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Thus, the privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *see also McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011). "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The deliberative process privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States,* 617 F.2d at 866.

FERC has redacted the portions of the Bay-Pederson emails that were written by former FERC Chairman Pederson. *See* Ex. 1 to Def.'s Mot. Plaintiffs protest that Exemption 5 does not apply to the Bay-Pederson emails because, plaintiffs say, they are not "predecisional." Pls.' Opp. at 14. Rather, they contend that the emails show "FERC staff discussing a decision that had already been made" – that Bay could not receive the civil service appointment. *Id*. But as FERC clarifies in reply, the "decision" that the Bay-Pederson emails precede relates to "personnel and administrative steps that were being preliminarily considered *after* [the civil

service appointment of Bay] was no longer viable." Def.'s Reply at 5 (emphasis in original). The Court's *in camera* review has confirmed FERC's contention that the redacted portions of the Bay-Pederson emails are "predecisional" for that reason. Furthermore, the redacted text is also "deliberative," which plaintiffs do not meaningfully contest in any event.[3] *See* Pls.' Opp. at 13– 15. Given that FERC has redacted portions of the Bay-Pederson emails that contain "proposals [and] suggestions . . . which reflect the personal opinions of the writer rather than the policy of the agency," *Coastal States*, 617 F.2d at 866, FERC has properly invoked Exemption 5.

## II. FERC's redactions from the ECQs are justified by Exemption 6.

Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 599 (1982). And "[t]he Supreme Court has made clear that Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature . . . ." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989), citing *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982). To determine whether Exemption 6 applies, a court or agency must "weigh the 'privacy interest in non-disclosure against the public interest in the release of the records.'" *Lepelletier v. FDIC,* 164 F.3d 37, 46 (D.C. Cir. 1999), quoting *Horner,* 879 F.2d at 874.

Here, the document in question is part of Bay's employment application for a position he did not receive, so FERC contends that it falls within the category of personnel files covered by

---

3      Plaintiffs state that "the context of the released portions of this documents give [sic] strong evidence that the conversation was neither pre-decisional nor deliberative," Pls.' Opp. at 14, but their substantive argument focuses solely on whether the "predecisional" prong of the test is satisfied. *See id.* at 13–15.

Exemption 6. *See* Def.'s Mem. at 12. Plaintiffs argue that Exemption 6 does not apply because the ECQs contain Bay's "laudatory" descriptions of his own accomplishments and therefore could not cause him the type of "reputational harm" that Exemption 6 is designed to prevent. Pls.' Opp. at 16. But "disclosure of even favorable information may well embarrass an individual or incite jealousy in his or her co-workers," implicating the "substantial privacy interests" that underlie Exemption 6. *Ripskis v. Dep't of Housing & Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984) (per curiam) (holding that the agency properly withheld the names and other identifying information of individuals who had received performance ratings of "outstanding," and noting that disclosure of that information was "likely to spur unhealthy comparisons . . . among . . . employees and thus breed discord in the workplace" and to "chill candor in the evaluation process"); *see also Horner*, 879 F.2d at 875. So Bay's ECQ responses are not ineligible for withholding under Exemption 6 merely because he cast himself in a positive light.

Plaintiffs further contend that Bay has somehow "waived" any privacy interest he might have had in the ECQs by discussing "himself and his qualifications" on the public record. Pls.' Opp. at 18. Specifically, plaintiffs point to Bay's responses to questions about his biography and professional accomplishments posed by members of the Senate Energy Committee during proceedings related to his nomination and confirmation as a FERC Commissioner, which occurred after his attempt to obtain the civil service appointment to the Director of Enforcement position. *See id.* at 4–5. But plaintiffs offer no authority for the proposition that this matters for purposes of the determination to be made here and, in any event, the waiver analysis for FOIA purposes turns upon official disclosures made by the agency, not the individual whose privacy the agency is seeking to protect. *See Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990).

7

A claim of official waiver in the context of FOIA requires a specific showing that plaintiffs have not even attempted to make: (1) "the information requested must be as specific as the information previously released"; (2) "the information requested must match the information previously disclosed"; and (3) "the information requested must already have been made public through an official and documented disclosure." *Id.*, citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983). Moreover, plaintiffs' mere suspicion that the content of the ECQs might overlap with and/or contradict statements Bay has made on the public record provides no basis for the Court to find a waiver here. *See* Pls.' Opp. at 21.

Finally, plaintiffs have failed to identify a public interest that outweighs Bay's clear privacy interest in the ECQs. *See Lepelletier*, 164 F.3d at 46. Plaintiffs speculate that their request for the unredacted ECQs "may shed light on Bay's candor in informing the Senate about his involvement in various matters at FERC." Pls.' Opp. at 21. They further opine that the ECQs "likely address [Bay's] involvement in matters he has distanced himself from in answers to direct questions from the Senate." *Id.* at 26. And they contend that "the public's right to know about controversies involving candidates for federal positions" is greater than Bay's privacy interests, which are diminished by his status as an officeholder in any event. *Id.* at 25.

But claims of misconduct by government officials "'are easy to allege and hard to disprove,'" and so "a requester 'must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 898 F. Supp. 2d 93, 105 (D.D.C. 2012), quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174–75 (2004). Plaintiffs have not offered any evidence that would cause a reasonable person to believe that Bay's statements to the Senate were untruthful, nor that any "controversy" has occurred that would be illuminated by the release

of the full ECQ document. Moreover, none of these allegations furthers the core purpose of FOIA, which is to "let citizens know 'what their government is up to.'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994), quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989).

Thus, the Court concludes that Bay's privacy interest in the content of the redacted portions of the ECQs outweighs the public interest asserted by plaintiffs, and that revealing the ECQs "would constitute a clearly unwarranted invasion of personal privacy" as to Bay.[4] *See* 5 U.S.C. § 552(b)(6). Therefore, the Court will grant FERC's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court finds that FOIA Exemption 5 justifies FERC's decision to withhold the redacted portions of the Bay-Pederson emails, and that FOIA Exemption 6 justifies its decision to withhold the redacted portions of the ECQs. Therefore, the Court will grant FERC's motion for summary judgment.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: November 4, 2014

---

4    The Court notes that the organizing principle behind FERC's decision to release certain small portions of the ECQs is difficult to discern. The Court need not address this issue, however, because it finds that FERC could have withheld the entire document under Exemption 6, and so plaintiffs have already received more information than they were entitled to under the law.

9